UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CONNECTICUT STUDENT LOAN FOUNDATION, | : | |
| Plaintiff, | : | |
| v. | : | No. 3:04-CV-00712 (DJS) |
| ENTERPRISE RECOVERY SYSTEMS, INC., | : | |
| Defendant. | : | |

**MEMORANDUM OF DECISION AND ORDER**

The plaintiff, Connecticut Student Loan Foundation ("CSLF"), brings this action against the defendant, Enterprise Recovery Systems, Inc. ("ERS"), alleging common law breach of contract, negligence, and breach of fiduciary duty. CSLF invokes this Court's jurisdiction pursuant to 28 U.S.C. § 1332. Now at bar is ERS' motion for summary judgment or, alternatively, to dismiss for lack of subject-matter jurisdiction. For the following reasons, ERS's motion (dkt. # 155) is DENIED in its entirety.

**I. BACKGROUND[1]**

This action arises out of the parties' participation in the academic financing industry under the Federal Family Education Loan Program ("FFEL Program"), 20 U.S.C. §§ 1071 to 1087-4, a

---

[1] Unless otherwise noted, the following is drawn from the parties' submissions relating to the motion at bar.

1

federal program designed to support the private funding of post-secondary education.  As relevant here, the FFEL Program involves the participation of six separate parties: (1) a student borrower; (2) the borrower's educational institution; (3) a lender; (4) one or more loan servicers; (5) a state-designated guarantor; and (6) the United States Department of Education.

The FFEL Program generally functions as follows: The lender issues a federally subsidized low-interest loan to the student borrower who uses the funds to attend a qualified educational institution.  When the borrower's studies end, the loan must be repaid to the lender.

The loan's repayment is protected by a guaranty issued by the state-designated guarantor.  Thus, if the borrower fails to make a periodic loan payment, the guaranty entitles the lender to recover the interest portion of that missed payment from the guarantor.  If the borrower's delinquency persists for over 270 days, the loan account is deemed in default and the guaranty entitles the lender to recover the loan's full principal and interest due from the guarantor.

The guaranty, in turn, is reinsured by the Department of Education.  Thus, where the guarantor incurs an obligation to pay a lender in accordance with the guaranty, the guarantor also becomes entitled to recover the same amount from the Department

of Education.[2]  As a prerequisite to the lender's entitlement to recover under the guaranty, however, the borrower's delinquent loan account must be properly "serviced" — i.e. specific collection-related due diligence activities must properly be performed with respect to the delinquency.[3]  The lender itself can service the account, but it may also retain private third-party loan servicers to do so on its behalf.  Private loan servicers, in turn, may also outsource some or all servicing tasks to other private loan servicers.

The improper performance of required servicing activities, however, causes the loan account to fall "out of guaranty" without regard to whether the lender itself or a private loan servicer bears responsibility for the defect.  Where a borrower fails to make a payment to the lender during an out-of-guaranty period, the lender may not recover that missing payment from the guarantor.  Out-of-guaranty status can be cured by resuming proper servicing activities, but if the loan is in default, out-of-guaranty status cannot be cured and guaranty protection is

---

[2] Congress discontinued the FFEL Program on March 26, 2010, by enacting of the Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, § 2201, 124 Stat. 1029, 1074, which terminated all authority to make or insure new loans under the Program after June 30, 2010.  See 20 U.S.C. § 1071(d).

[3] Depending on the circumstances, proper servicing may require diligent attempts to contact the borrower by telephone or by mail, or diligent attempts to locate the borrower through the use of effective commercial skip-tracing techniques.  See 34 C.F.R. § 682.411.  Once contact is established, proper servicing may require informing the borrower of the delinquency, urging the borrower to make payments sufficient to eliminate the delinquency, or providing information to the borrower regarding options to avoid default and regarding the consequences of defaulting on the loan.  See id.

permanently lost.  The delinquent borrower's obligation to repay the loan, however, is unaffected by out-of-guaranty status.  Thus, a lender having lost the ability to recover missed payments under a guaranty remains entitled to collect the same directly from the borrower.

CSLF is a not-for-profit corporation created by the State of Connecticut to participate in the FFEL Program in three distinct capacities: (1) as a lender; (2) as Connecticut's designated guarantor; and (3) as a loan servicer.  For marketing and accounting purposes, CSLF assigns these separate functions to three distinct internal divisions.[4]  Susie Mae — CSLF's lending division — issues loans directly to student borrowers.  Susie Mae's loans are guaranteed by CSLF's guarantying division and serviced by Connecticut Assistance for Loan Servicing ("CALS") — CSLF's servicing division.[5]  In addition to Susie Mae's loans, many independent third-party lenders issue loans that are also guaranteed by CSLF's guarantying division and serviced by CALS.

ERS — an Illinois corporation having its principal place of business in Westchester, Illinois — is a private loan servicer.

On November 15, 1999, CSLF and ERS entered into an Agreement which outsourced CALS' existing loan servicing

---

[4] Despite its divided internal structure, CSLF is a single legal entity and all work is performed by the same personnel.
[5] CSLF's guarantying division does not appear to have been otherwise named.

4

responsibilities to ERS.  Over a period beginning in August 2000 and continuing until CSLF terminated its relationship with ERS on July 15, 2002, a number of loan accounts serviced by ERS under this Agreement fell out of guaranty.

Despite subsequent efforts to cure, 182 ERS-serviced loan accounts now remain either partly or permanently out of guaranty.  Susie Mae issued most loans underlying these 182 accounts, but some were issued by other third-party lenders.  All issuing lenders may now only proceed directly against the individual student borrowers associated with these 182 accounts in order to recover any delinquencies having occurred during out-of-guaranty periods, or any future delinquencies on accounts now permanently out-of-guarantee.  CSLF has retained OSI Education Services ("OSI") to attempt such direct collection with respect to loans issued by Susie Mae.

In this action, CSLF alleges that ERS' defective performance under the 1999 Agreement caused the issuing lenders — including Susie Mae and the third-party lenders — to lose guaranty protection to some extent with respect to each of the 182 affected loan accounts.  CSLF further alleges that CALS is liable for the resulting losses and costs, and claims that ERS is liable to CALS to the same extent.

ERS now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  In the alternative, ERS

5

moves to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1).

## II. ANALYSIS

### A. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court must therefore "determine whether, as to any material issue, a genuine factual dispute exists." Kaytor v. Electric Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248; Fincher v. Depository Trust and Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010). The Court must also determine whether the undisputed material facts, if any, entitle the movant to judgment as a matter of law under the controlling substantive standards. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Kaytor, 609 F.3d at 545.

In making these determinations, "the court should review all of the evidence in the record." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000); Kaytor, 609 F.3d at 545. In so doing, "the court must draw all reasonable inferences in favor of the nonmoving party, and . . . may not make credibility determinations[,] weigh the evidence," or otherwise "resolve disputed questions of fact." Reeves, 530 U.S. at 150; Kaytor, 609 F.3d at 545.

Here, ERS seeks summary judgment on all claims in the First Amended Complaint — namely, breach of contract, negligence, and breach of fiduciary duty — on the ground that "CSLF has not been damaged." (Dkt. # 156-6, pp. 5-7.) As a preliminary matter, ERS' argument rests on the erroneous premise that actual damages are essential to each of these causes of action. (See dkt. # 156-6, pp. 5-6.) Indeed, "actual harm is an essential element of torts sounding in negligence." Right v. Breen, 277 Conn. 364, 376 n.11, 890 A.2d 1287, 1293 n.11 (2006). See Sturm v. Harb Development, LLC, 298 Conn. 124, 139, 2 A.3d 859, 870 (2010) ("The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury."). Depending on the underlying conduct, actual harm may also be deemed essential to some breach

of fiduciary duty claims.[6]  In contrast, however, actual harm is not essential to stating a valid breach of contract claim.  See News America Marketing In-Store, Inc. v. Marquis, 86 Conn. App. 527, 535, 862 A.2d 837, 842-43 (2004) ("If a party has suffered no demonstrable harm . . . that party may be entitled . . . to nominal damages for breach of contract."), aff'd, 276 Conn. 310, 885 A.2d 758 (2005).  See, e.g., Lydall, Inc. v. Ruschmeyer, 282 Conn. 209, 919 A.2d 421 (2007) (plaintiff "could point to no pecuniary damages" but was nonetheless deemed "entitled to nominal damages of $1 under its breach of contract claim.").  Even if undisputed, then, the fact that "CSLF has not been

---

[6] A "claim of breach of fiduciary duty . . . is a tort claim." Gardner Heights Health Care Center, Inc. v. Korolyshun, 117 Conn. App. 745, 747, 982 A.2d 186, 187 (2009) (per curiam).  Under Connecticut common law, "different treatment [is] accorded to intentional and negligent acts — allowing recovery of nominal damages where a plaintiff's right intentionally has been invaded, but allowing recovery only upon proof of causation and of actual damages where a plaintiff's right negligently has been invaded." Right v. Breen, 277 Conn. 364, 376, 890 A.2d 1287, 1293 (2006).  Connecticut's Supreme and Appellate Courts have upheld the propriety of nominal damages for breach of fiduciary duty claims.  See, e.g., Rafalowski v. Old County Road, Inc., 245 Conn. 504, 506-08, 714 A.2d 675, 676-77 (1998) (per curiam) (affirming award of nominal damages for breach of fiduciary duty claim where "the plaintiffs had not proved that they were harmed by the breach."); Rossman v. Morasco, 115 Conn. App. 234, 243 n.7, 974 A.2d 1, 3 n.7 (2009) (recognizing that the defendant's breach of fiduciary duty "entitled the plaintiff to at least nominal damages.").  The Supreme Court, however, has also recognized that a breach of fiduciary duty may be premised on non-intentional conduct.  Solomon v. Aberman, 196 Conn. 359, 384, 493 A.2d 193, 206 (1985) (A "breach of fiduciary duty claim . . . may not, depending upon the evidence adduced, require the plaintiff to prove 'intent,' as the 'wrong' occurs simply in the breach.").  Thus, to the extent that a breach of fiduciary duty may amount to a tort sounding in negligence, actual harm will be essential to the prima facie case.  But see News America Marketing In-Store, Inc. v. Marquis, 86 Conn. App. 527, 536, 862 A.2d 837, 843 (2004) (concluding that defendant did not breach his duty of loyalty to his former employer by intentionally soliciting another employee for employment with a competitor, explaining that "[o]ne of the elements of a cause of action in tort for a breach of loyalty is actual harm, without which the cause of action is incomplete."), aff'd, 276 Conn. 310, 885 A.2d 758 (2005).

damaged" would provide no basis for judgment as a matter of law with respect to CSLF's breach of contract claim. Accordingly, ERS' motion for summary judgment must be denied as to the same.

To the extent that actual harm essential to CSLF's negligence and breach of fiduciary duty claims, ERS focuses its challenge on the evidentiary value of a November 2006 payment of $532,165.80 from CALS to Susie Mae. Specifically, ERS argues that CSLF "relies exclusively" on this payment to show its damages. (Dkt. # 156-6, p. 6.) ERS further argues that since CALS and Susie Mae are both internal divisions of CSLF, the payment from one to the other was "shuffled money between three separate accounts, all owned by CSLF." (Dkt. # 156-6, p. 4.) As such, ERS concludes that the November 2006 payment cannot constitute evidence of actual harm, and that CSLF has therefore failed to establish an element that is necessary to its claims.

In response, CSLF asserts that its actual damages cannot be precisely ascertained without first analyzing each affected loan account to determine the exact losses and costs flowing from ERS' defective performance. (Dkt. # 167, p. 10.)

Having fully reviewed the record, the Court concludes that a genuine dispute of material fact exists with respect to the existence and extent of actual harm precluding present disposition as a matter of law. The extent to which CSLF has been harmed, if at all, is a question of fact that will likely

affect the outcome of this action, and is thus material.  A genuine dispute exists as to this question of material fact because evidence in the record could cause a reasonable jury to conclude that CSLF has indeed been harmed.[7]  Accordingly, ERS' motion for summary judgment must be denied.

### B. Subject-Matter Jurisdiction

Diversity jurisdiction, which CSLF here invokes, exists in "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states."  28 U.S.C. § 1332(a)(1).  ERS concedes that CSLF is a citizen of a different state, but contests satisfaction of the jurisdictional amount on the ground that "CSLF can only support damages of $28,411.08." (Dkt. # 156-6, pp. 7-8.)

A party invoking diversity jurisdiction "has the burden of proving that it appears to a 'reasonable probability' that the

---

[7] For instance, the $532,165.80 transaction appears to represent the total balances outstanding on 105 of the 182 loan accounts having lost guaranty protection due to defective servicing by ERS as of August 2006. (See dkt. # 156-2, p. 12.)  A reasonable jury could conclude that CSLF was harmed when it lost the ability to shift the ultimate risk of loss to the Department of Education with respect to these outstanding balances.  (See dkt. # 156-2, pp. 8-9.)  Also, the defective servicing appears to have obliged CSLF to acquire additional out-of-guaranty accounts from third-party lenders in order to avoid defaulting on its existing financing obligations. (See dkt. # 156-2, pp. 10-12, 19.)  A jury could thus conclude that CSLF was harmed by having been obliged to acquire loans on which it had never borne any risk of loss without the ability to subsequently shift the same to the Department of Education.  (See dkt. # 156-4, pp. 15-20; dkt. # 156-5, pp. 27-41.)  Finally, the parties recognize that CSLF has taken measures to minimize ultimate losses on the 182 out-of-guaranty accounts, such as hiring OSI to attempt direct collection from individual student borrowers. (See dkt. # 156-6, pp. 6-7; dkt. # 167, pp. 9-10.)  A jury could conclude that CSLF was harmed by having incurred the costs associated with these measures.

claim is in excess of the statutory jurisdictional amount." Scherer v. The Equitable Life Assurance Society of the United States, 347 F.3d 394, 397 (2d Cir. 2003). The Second Circuit, however, recognizes a "rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." Id. To overcome this presumption, "the party opposing jurisdiction must show 'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." Id. (quoting St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938)). Put differently, a party opposing jurisdiction must show that, at the time the Complaint was filed, the "legal impossibility" of a recovery satisfying the jurisdictional threshold was "so certain as virtually to negative the plaintiff's good faith in asserting the claim." Id.

Once the jurisdictional amount is satisfied, the Court retains jurisdiction over the matter despite subsequent variation to the actual amount in controversy. Id. See, e.g., Yong Qin Luo v. Mikel, 625 F.3d 772, 776 (2d Cir. 2010) (per curiam) ("a plaintiff cannot seek to deprive a federal court of jurisdiction by reducing her demand to $75,000 or less once the jurisdictional threshold has been satisfied.").

Here, the First Amended Complaint seeks damages consisting of: (1) "interest which cannot be paid as part of any default

11

claim by the guaranty agency for the period the loan was 'out of guarantee'"; (2) "loans permanently ineligible for claim payment by the guarantor, principal and interest"; (3) "loans [for] which CSLF/CALS contracted to have others perform the work of [ERS]"; and (4) "reasonable attorney's fees and costs." (Dkt. # 60, p. 6.) To the extent that the specific value of these claimed damages might be deemed inconclusive, the Court may look to "other evidence in the record to determine the amount in controversy." Yong Qin Luo, 625 F.3d at 775. As previously discussed in the context of ERS' motion for summary judgment, evidence exists in the record which could lead a reasonable jury to conclude that guaranty protection was lost with respect to $532,165.80 in loaned funds due to defective servicing by ERS, and that CSLF is thereby exposed to a potential commensurate loss. The damages claimed in the Complaint encompassed this harm, and even "grave doubt" as to the likelihood of its full recovery does not warrant dismissal. Scherer, 347 F.3d at 397. See Tongkook America, Inc. v. Shipton Sportswear Co., 14 F.3d 781, 785 (2d Cir. 1994) ("Where the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings."). The damages sought in the Complaint appear sufficient to satisfy the jurisdictional threshold, and ERS has not shown 'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold. CSLF's

continued efforts to mitigate its potential loss may indeed reduce its ultimate recovery, but diversity jurisdiction is not inextricably tied to the damages ultimately recovered.  See Scherer, 347 F.3d at 397 ("Once jurisdiction has attached, it cannot be ousted by subsequent events.").  Accordingly, ERS' alternative motion to dismiss for lack of subject-matter jurisdiction must be denied.

### III. CONCLUSION

For the foregoing reasons, ERS' motion for summary judgment or, alternatively, to dismiss for lack of subject-matter jurisdiction **(dkt. # 155)** is **DENIED in its entirety**.

SO ORDERED this 11th day of April, 2011.

_____/s/DJS_____
**DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**